WILLIAM P. HEPBURN AND ROBERT HEPBURN, APPEL-
LANTS, v. NORTH JERSEY DISTRICT WATER SUPPLY
COMMISSION, RESPONDENT.

JACOB S. KIESLER, APPELLANT, v. NORTH JERSEY DIS-
TRICT WATER SUPPLY COMMISSION, RESPONDENT.

Submitted March 25, 1924.   Decided October 20, 1924.

1. Where a piece of land from a larger tract is being condemned
   in fee for a right of way for the construction of an aqueduct and
   the condemning party is not bound in the proceedings as to the
   location and size of the aqueduct and character of its construc-
   tion, it is error to permit a witness to testify that the effect of
   the taking upon the adjacent and remaining land of the land-
   owners would be protection from an encroachment that might
   cut off light and air and a protection from fire.
2. Under the same circumstances *held* error to have permitted a
   witness to testify as to what his observation had been of land
   development along another aqueduct built in another state, there
   being no proof of similarity as to the size and location of the
   aqueduct or of similarity in the localities.
3. In a trial to condemn land in fee for a right of way for an
   aqueduct it was error to admit in evidence photographs taken
   along an aqueduct constructed in 1842 for the purpose of show-
   ing that the houses photographed had been built in the vicinity
   of the aqueduct, as there was no evidence offered as to similarity
   of conditions.

On appeal from the Essex County Circuit Court.

For the appellants, *John W. Harding.*

For the respondent, *Spaulding Frazer.*

The opinion of the court was delivered by

KATZENBACH, J.   The North Jersey District Water Sup-
ply Commission having the power to condemn lands desired
to construct an aqueduct from Little Falls to the Belleville
reservoir of the city of Newark.   This necessitated the
acquisition of a right of way.   The route determined upon

passed through lands of William B. Hepburn and Robert Hepburn. This tract is composed of thirty-four and six-tenths acres. The amount of land desired from this tract by the commission was two and three hundred and thirty-six thousandths acres. This will leave a parcel of thirteen and three-tenths acres north of the right of way and a parcel of nineteen acres south of the right of way. The petition states that the commission desired to acquire the fee of the land it proposes to take, but across the land taken there would be reserved to the owners a right of way of one hundred feet in width for the purpose of a roadway at about the middle of the strip so that the northerly tract and southerly tracts would be connected by this roadway.

The route of the right of way fixed upon by the commission also passes through a tract of land owned by Jacob S. Kiesler. The entire tract of Mr. Kiesler comprises eight and two-tenths acres. The land to be taken is an irregular piece and strip of land consisting of eight hundred and forty-four thousandths of an acre. The taking of this land will leave one and two-tenths acres north and six and three-tenths acres south of the tract taken. Across the parcel to be condemned it is proposed to leave a fifty-foot right of way so as to permit passage over a roadway between the northerly and southerly parcels remaining to Mr. Kiesler. The usual method of procedure under the Eminent Domain act was taken upon the presentation of the petitions to the court. The commissioners appointed awarded to the Messrs. Hepburns $26,400 for the tract taken and the damage to the remainder of their land. Mr. Kiesler was awarded for his land taken and damages to the land untaken, $6,500. From these awards the commission appealed. The appeals were tried together at the Essex Circuit and resulted in a verdict for the Messrs. Hepburns of $5,250 and in a verdict for Mr. Kiesler of $1,750. From the judgments entered on these verdicts the landowners have appealed. The cases were tried together by consent. They are argued together in this court.

The appellants contended that the principal element of the damage they suffered was the damage to the land not

taken. The testimony offered by them was that the tracts were well located for residences; that there had been a rapid development during the past few years in the direction of their properties; that the two tracts were bounded by improved highways, and had the advantage of electric light, gas and water service; that the land was capable of division into lots which could under restriction be so laid out as to prevent the erection of undesirable buildings. The contention was also made that a right of way through the tracts dividing them in the manner stated would greatly damage the remainder of the land for the purpose of residential sites for which it was best adapted.

To counteract the contention of the landowners last mentioned, the commission secured the services as a witness of one Charles W. Leavitt, who testified that he was a civil and landscape engineer and had been engaged in the development of suburban properties. He was permitted to testify that he would look upon the taking of the land by the commission as being territory open to light and air, but "invaluable" for utilization excepting at the point where the rights of way have been commanded and for the possibility of its use as a recreation area and the property would then have to be utilized subject to the right of this taking and would have to be subdivided accordingly; that the effect upon the adjacent land after subdivision took place would be that the lands adjacent to the taking would forever have the protection from an encroachment that might cut off their light and air. This witness also stated that the taking would be advantageous as it would be a protection from fire and would allow the admission of light and air. Mr. Leavitt was permitted later in his examination to testify over objection as to what his observation had been of the effect of land development along the line of the right of way for the Croton aqueduct through the counties of Westchester and Putnam in New York State. He testified that the Croton aqueduct had had no effect that he was able to observe; that the taking was fenced and was used by people, in walking which enabled them to get off the path of motors. He was also per-

mitted to testify as to the fair value of houses along the line of the Croton aqueduct.

The overruling of the objections to questions which brought from Mr. Leavitt this testimony are made grounds of appeal. The commission was condemning a fee for the right of way. It was not seeking to condemn an easement under a petition which would subject the land to be acquired for the right of way to certain specific uses. When a fee is condemned it may be used after condemnation in any lawful mode. There is no assurance that it may not be used for other purposes than an aqueduct. Consent might be given for example to put an unsightly line of telephone or telegraph poles on the property acquired. There are many purposes to which the right of way acquired could be put which would damage the remainder of the tract. Permitting Mr. Leavitt to use as a comparison the right of way of the Croton aqueduct and to testify as to its use as a walk, &c., was to permit the fortification by illustration of his opinion that the taking of the land would advantage instead of damage the remainder of the tracts of the landowners. There was no similarity shown as to the size of the aqueducts; no similarity shown as to the localities; and no similarity shown as to the conditions under which residences could be built. What was done along the Croton aqueduct might be impossible of attainment along the line of the proposed aqueduct. The effect of this testimony would be to decrease the damages awarded to the landowners. That it had such an effect upon the jury is best evidenced by the fact that from the testimony of those engaged in the real estate business who were familiar with values in the neighborhood of the tracts a jury could infer that the land was worth approximately $2,000 an acre so that the verdicts rendered allowed the landowners virtually nothing for the damage to the remainder of the tracts. We are of the opinion that it was error to permit Mr. Leavitt to answer the questions objected to. The appellants at the trial also took exceptions to the admission in evidence of five photographs produced by Edward Wegmann, an expert witness for the commission. The admission of these photo-

graphs is made a ground of appeal. They were views along the Croton aqueduct which had been built between the years 1837 and 1842 to bring a water supply from the Croton watershed to New York City. They were offered for the purpose of showing that the houses photographed had been built in the vicinity of the Croton aqueduct. From these photographs it could be argued that the Hepburn and Kiesler tracts would have residences built thereon in the vicinity of the proposed aqueduct.

With the admission of the photographs there was admitted evidence of the manner in which the Croton aqueduct was constructed and its present appearance. The Croton aqueduct is about one hundred and thirty miles in length. The photographs were taken at different points along the route. It is inconceivable that photographs of an aqueduct built over eighty years ago exhibiting present conditions as to size, character or construction, and general environment could be relevant in an action to acquire land for a right of way for an aqueduct not yet constructed and where the character of construction, size, and exact location have not been definitely decided upon. While there was evidence as to what the dimensions, &c., of the proposed aqueduct would be, it was stated by counsel for the commission that the witness testifying to these dimensions had no authority to bind the commission. Not only were these photographs admitted, but they were made the subject of comment by the court in the charge to the jury, in the following language: "Photographs were admitted in evidence. These photographs were admitted by me and thought to be relevant because they showed, in the absence of actual construction in this case, the character of construction of aqueducts elsewhere whose measurements were given and therefore known to us, if they were accurate. There is testimony given as to the manner in which this particular aqueduct would be constructed; that it would be covered with earth and seeded, and why. The treatment of the scheme was detailed to us." As the commission was not bound by the testimony admitted as to the measurements and character of the proposed construction we

feel that the admission in evidence of photographs depicting conditions existing along the line of another aqueduct was harmful to the appellants and their admission error.

There are other grounds of appeal briefed but these will not be considered, as we have reached the conclusion that for the reasons stated the judgments should be reversed and *renires de novo* awarded.

*For affirmance*—THE CHIEF JUSTICE, BLACK, LLOYD, CLARK, KAYS, JJ. 5.

*For reversal*—THE CHANCELLOR, TRENCHARD, PARKER, MINTURN, KALISCH, KATZENBACH, CAMPBELL, WHITE, GARDNER, VAN BUSKIRK, McGLENNON, JJ. 11.